UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MONICA L.,[1]

                 Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

DECISION AND ORDER

1:19-CV-1435 (CJS)

---

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., May 6, 2020, ECF No. 9; Def.'s Mot., June 30, 2020, ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 9] is denied, the Commissioner's motion [ECF No. 11] is granted, and the Clerk of Court is directed to close this case.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

BACKGROUND

The Court assumes the reader's familiarity with the underlying facts and procedural history in this case. However, the Court provides a brief recitation of the relevant facts as they pertain to Plaintiff's arguments before this Court.

Plaintiff filed her SSI application on August 1, 2016, alleging an onset date of April 1, 2016. Transcript ("Tr."), 205, Jan. 22, 2020, ECF No. 6. Plaintiff also filed an application for DIB benefits, alleging that she became unable to work because of her disabling condition on April 1, 2016. Tr. 212. In her disability report, Plaintiff reported three conditions as limiting her ability to work: depression, mental health, and anxiety. Tr. 238. On September 27, 2016, the Commissioner determined that Plaintiff did not qualify for either DIB or SSI benefits. Tr. 113–136. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 139.

Plaintiff's request was approved and the hearing was held before an ALJ on October 1, 2018 in Buffalo, New York. Tr. 58. Plaintiff appeared with her attorney, who acknowledged that Plaintiff's impairments were all related to mental health, and not physical health. Tr. 62. Vocational expert Michael Klein testified by telephone.

At the hearing, the ALJ discussed Plaintiff's education and work history with her, noting that she worked sporadically for a few janitorial services and "temp agencies" for several years before taking a part-time job as a bus aide, which she still held at the time of the hearing. Tr. 71–76. Following the ALJ-led discussion of work history, the ALJ allowed Plaintiff's counsel to question Plaintiff, and Plaintiff

testified, in pertinent part, as follows:

> [Attorney:] So, why, even though you've been doing some work and your history is a lot of part-time work, what prevents you from doing really any job full time successfully?
>
> [Plaintiff:] My anxiety and my depression and my negative thinking. I don't – I have a best friend that's a schizophrenic and I don't hear voices, I know he hear voices, I don't have that condition, I have the negative thinking when I get overwhelmed and anxiety and sad and depressed. If I feel like somebody is talking about me or don't like me it's tough. That's what's tough and that makes me not want to go to work, that makes me call off, that makes me feel like if it's a group of people, if it's something, it's the consistency, that's what it is. It's the consistency for me doing it every day that brings all the anxiety and fear and that's a bit overwhelming to me . . . . These days now, every day that I wake up of my life it's a like a it's a struggle, it's a struggle . . . . The only reason why I don't do something like thinking about taking my life is because that I know I have my son.

Tr. 83–84.

Thereafter, the ALJ presented the vocational expert ("VE") with a hypothetical:

> Assume an individual the same age, education[2] and work experience as the claimant . . . . [who] has no exertional limitations and mentally can understand, remember, and carry out simple and routine instructions and tasks; can work at a low stress environment, which I'll define for us as to include simple routine work, no supervisory duties, no independent decision making; no strict production quotas; minimal changes in work routine and processes; this individual can engage in occasional interaction with supervisors and co-workers, but no incidental interaction with the general public; there would be no team or tandem work . . . .

Tr. 104. The VE testified that there would be several jobs available in the national

---

[2] Claimant was born in 1972, and she testified that she has a high school diploma and has attempted some college coursework. Tr. 71.

3

economy to suit such an individual, including a store laborer, a medium cleaner position, and an office cleaner position. Tr. 105. The VE also testified that there would be no jobs available if the individual could not work in the low stress environment. Tr. 106.

In addition to the transcript of the hearing before the ALJ, the record includes reports from Plaintiff's consultative examination with Janine Ippolito, Psy.D., on September 15, 2016, and a records review by non-examining state-agency psychological consultant, Dr. Bruno, on September 27, 2016. Dr. Ippolito diagnosed Plaintiff with posttraumatic stress disorder ("PTSD") with panic attacks, and "major depressive disorder, recurrent, severe without psychiatric features." Tr. 367. After an examination, Dr. Ippolito concluded:

> [Plaintiff] presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, learn new tasks, perform complex tasks independently, and make appropriate decisions with no evidence of limitations. She can maintain a regular schedule and relate adequately with others with moderate limitations. She can appropriately deal with stress with marked limitations. These limitations are due to her emotional distress and fatigue.

Tr. 367. Further, after a review of Plaintiff's files, non-examining psychological consultant Dr. Bruno concluded that Plaintiff's impairment is severe, but that her "impediments do not meet a listing" of a mental disorder. Tr. 369.

The record also contains several sets of Plaintiff's health records. These records include: a psychiatric evaluation and notes from group therapy sessions at Erie Medical Center in 2013; general healthcare treatment records (no psychological

4

treatment) from the Northwest Community Healthcare Center between 2012 and 2018; psychological evaluations and treatment notes from Horizon Health covering the period from June 2016 to September 2018; and records indicating hospital visits to the Erie County Medical Center for neck pain (following a car accident) in 2017, and chest pain in 2018. Tr. 294–479.

In his decision on November 21, 2018, the ALJ found that Plaintiff was not disabled, and denied both DIB and SSI benefits. Tr. 50–51. On August 29, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARDS

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for a special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of

> Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). A reviewing court must first determine "whether the Commissioner applied the correct legal standard." *Jackson v. Barnhart*, No. 06-CV-0213, 2008 WL 1848624, at *6 (W.D.N.Y. Apr. 23, 2008) (quoting *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Failure to apply the correct legal standards is grounds for reversal." *Id.* (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). However, provided the correct legal standards are applied, a court's review of the Commissioner's decision is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). In other words, "[w]here the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

DISCUSSION

In seeking reversal of the Commissioner's decision, Plaintiff maintains that the ALJ's decision was not supported by substantial evidence. Pl.'s Mem. of Law, 7, May 6, 2020, ECF No. 9-1. Specifically, Plaintiff argues that, due to changes in 2017 to the four broad areas of mental functioning that must be assessed when a mental impairment is alleged, the medical opinions that the ALJ relied upon were outdated. Put another way, Plaintiff maintains that the ALJ lacked any medical expert opinion regarding the severity of Plaintiff's impairments in the four broad areas of mental functioning, and hence that he improperly substituted his own judgment for that of qualified medical experts. Pl.'s Mem. of Law at 9.

<u>The Special Technique</u>

When a claimant alleges a mental impairment, the Commissioner's regulations require the ALJ to apply a "special technique" at the second and third steps of the five-step evaluation process. *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (citing 20 C.F.R. § 404.1520a). First, the ALJ must utilize the "Paragraph A" criteria[3] to evaluate the claimant's pertinent symptoms, signs, and laboratory findings and

---

[3] The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with additional guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are the four functional areas of (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). "Paragraph C" criteria are not applicable in the present case.

7

determine whether he or she meets the requirements of one of the mental impairments listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1, § 12.00"). *See* 20 C.F.R. § 404.1520a(b)(1). If the claimant does have such an impairment, the ALJ must assess the claimant's limitations in the four broad areas of mental functioning that constitute the Paragraph B criteria[4]: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (collectively, the "Paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3).

The ALJ must rate the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). To satisfy the "Paragraph B" criteria, a claimant's mental disorder must result in extreme limitation of one, or marked

---

[4] App'x 1, § 12.00E defines the Paragraph B criteria, and includes specific examples:

1. Understand, remember, or apply information (paragraph B1). This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task . . . .

2. Interact with others (paragraph B2). This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others . . . .

3. Concentrate, persist, or maintain pace (paragraph B3). This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace . . . .

4. Adapt or manage oneself (paragraph B4). This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes . . . .

limitation of two, of the four criteria. App'x 1, § 12.00F(2). After rating the degree of functional limitation resulting from the claimant's mental impairment(s), the ALJ must then determine the severity of the mental impairment(s). 20 C.F.R. § 404.1520a(d).

The manner in which the ALJ must perform the "special technique" for mental impairments is well documented in the Commissioner's regulations. 20 C.F.R. § 404.1520a provides, in part, as follows:

(c) Rating the degree of functional limitation.

(1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.

* * *

(e) Documenting application of the technique . . . . At the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision), we will document application of the technique in the decision. The following rules apply:

* * *

(4) At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section . . . .

9

Further, App'x 1, § 12.00F outlines how the Paragraph B criteria are to be used to evaluate a claimant's mental disorder. Of particular import to the present case is sub-section 3:

> 3. Rating the limitations of your areas of mental functioning.
>
> a. General. We use all of the relevant medical and non-medical evidence in your case record to evaluate your mental disorder: The symptoms and signs of your disorder, the reported limitations in your activities, and any help and support you receive that is necessary for you to function.
>
> * * * *
>
> d. Overall effect of limitations. Limitation of an area of mental functioning reflects the overall degree to which your mental disorder interferes with that area. The degree of limitation is how we document our assessment of your limitation when using the area of mental functioning independently, appropriately, effectively, and on a sustained basis. It does not necessarily reflect a specific type or number of activities, including activities of daily living, that you have difficulty doing. In addition, no single piece of information (including test results) can establish the degree of limitation of an area of mental functioning.

Lastly, *Social Security Ruling (SSR) 17-2* clarifies the evidentiary requirements for an ALJ's findings at step three in the five-step evaluation process, including findings regarding mental disorders using the "special technique." In order to find that an individual's impairment meets an impairment listed in App'x 1, § 12.00, the record must contain one of three specific types of evidence: a prior administrative finding by a medical expert, medical expert testimony, or a report from the Appeals Council's medical support staff. *SSR 17-2*, 2017 WL 3928306 at *3 (S.S.A. Mar. 27, 2017). However, if an ALJ "believes that the evidence [in the record]

does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, [the Commissioner does] not require the [ALJ] to obtain [medical expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." *Id.* at *4. Significantly, the ruling states that an ALJ:

> [M]ust consider all evidence in making a finding that an individual's impairment(s) does not medically equal a listing. If an [ALJ] believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the [ALJ] is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An [ALJ]'s articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

*Id.*

The ALJ's Decision

In his decision in the present case, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through September 30, 2020. Tr. 42. At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2016, the alleged disability onset date. Tr. 42. At step two, the ALJ determined that Plaintiff had two severe mental impairments: post-traumatic stress disorder ("PTSD"), and major depressive disorder. Tr. 42.

11

At step three of the process, the ALJ applied the "special technique" and determined that Plaintiff's mental impairments, considered either individually or in combination, did not meet or medically equal the criteria of Mental Disorder listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders) in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 44. With respect to the Paragraph B criteria, the ALJ found moderate limitations with respect to Plaintiff's ability to understand, remember, and apply information; interact with others; and adapt or manage herself. Tr. 44. The ALJ found that Plaintiff had a marked limitation with regard to concentrating, persisting, or maintaining pace. Tr. 44. Because Plaintiff had a marked limitation in only one area, the ALJ found Plaintiff did not satisfy the Paragraph B criteria.

Before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945. After careful consideration of the entire record, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> [C]an understand, remember, and carry out simple and routine instructions and tasks; the claimant is able to work in a low stress work environment reflected by simple and routine work, no supervisory duties, no independent decision-making, no strict production quotas, minimal changes in work routine and processes. The claimant can have occasional interaction with supervisors and co-workers, but no or only

12

> incidental interaction with the general public. The claimant can perform work that does not involve team or tandem work.

Tr. 45.

The ALJ found that Plaintiff had no past relevant work. Tr. 49. However, based on Plaintiff's RFC, age, education, and work experience, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See* 20 C.F.R. § 404.1563, § 416.963. Relying on the vocational expert's testimony, the ALJ found that a person of Plaintiff's age, education and RFC could perform such unskilled jobs in the national economy as store laborer, cleaner, marker, and office cleaner. Tr. 50. Hence, the ALJ found Plaintiff *was not* disabled for the purposes of DIB or SSI. Tr. 50–51.

Plaintiff's "Substantial Evidence" Claim

In arguing that the ALJ's assessment of Plaintiff's mental functioning was not supported by substantial evidence, Plaintiff relies heavily upon the holding of another court in this District in a case presenting similar circumstances. In *Genua v. Comm'r of Soc. Sec.*, No. 18-CV-00423-MJR, 2019 WL 5691827 (W.D.N.Y. Nov. 4, 2019), United States Magistrate Judge Michael Roemer summarized recent changes in the Commissioner's regulations with respect to the how the Paragraph B criteria must be assessed. Judge Roemer explained:

> The SSA recently made changes to the Listings used to evaluate claims involving mental disorders . . . . District courts are expected "to apply those rules that were in effect at the time the ALJ issued [the] decision." . . . . Evaluation of the severity of mental impairments, or the "Paragraph B criteria," is among those changes . . . .

13

> Prior to January 17, 2017, the limitations in four broad functional areas [of the "Paragraph B criteria," identified in 20 C.F.R. § Pt. 404, Subpt. P, Appx. 1 (2016)] were: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.
>
> After January 17, 2017, the four functional areas were amended to: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself . . . .

*Genua*, 2019 WL 5691827, at *4.

In *Genua*, the claim was filed and initially denied, and a hearing was held before the ALJ, prior to the Commissioner's change of the Paragraph B criteria. *Genua*, 2019 WL 5691827 at *1. However, the ALJ's decision did not issue until after the Paragraph B criteria had been amended. *Id.* In finding at step three that the claimant did not satisfy the Paragraph B criteria, the *Genua* ALJ applied the new criteria, but he relied upon two consultative examinations that did not address the claimant's capacity in two of the four new criteria. Although an opinion by the non-examining state psychological consultant did address all four of the new functional areas, and supported the ALJ's decision, "it was not apparent to the [*Genua*] Court that the ALJ considered or relied upon the [state psychological consultant's] opinion in" his step three analysis. *Id.* at *5. Therefore, Judge Roemer concluded that "[t]he Court . . . cannot determine whether the ALJ arbitrarily substituted his analysis of the medical record for that of a trained physician" and remanded the matter for further administrative proceedings. *Id.* at *5–6.

14

Plaintiff maintains that the holding in *Genua* is directly applicable here. Plaintiff notes that her consultative exam with Dr. Ippolito, and the records review by Dr. Bruno, were both conducted prior to the change in the Paragraph B criteria. Therefore, Plaintiff argues that the ALJ could not have relied on their expert medical opinion for his assessment of Plaintiff's functional limitations, but must instead have improperly substituted his own layman's opinion. The Court disagrees.

After a careful review of the record and the ALJ's decision, the Court finds that the ALJ's determination with respect to the Paragraph B criteria was both supported by substantial evidence and adequately documented pursuant to the Commissioner's regulations. There are two specific differences between the facts in *Genua*[5] and the facts in the present case.

First, in the present case, neither Dr. Ippolito nor Dr. Bruno framed their evaluations of Plaintiff in terms of the Paragraph B criteria. *See Gary H. v. Comm'r of Soc. Sec.*, No. 19-CV-00919, 2020 WL 7239821, at *8 (W.D.N.Y. Dec. 9, 2020) ("Any argument by plaintiff that [a medical expert] opinion must frame its findings to match agency regulations is unavailing.") Dr. Ippolito's medical source statement, though thorough and consistent with other evidence in the record, groups a multitude of mental functions into three categories distinct from the Commissioner's Paragraph B criteria: mental functions with no limitations, moderate limitations, and marked

---

[5] In *Genua*, Judge Roemer cites favorably to *Mattioli v. Berryhill*, No. 3:17-CV-1409(WIG), 2018 WL 5669163 (D. Conn. Nov. 1, 2018). This case is distinguishable from *Mattioli* for the same reasons as *Genua*.

limitations. Tr. 367. Dr. Ippolito found that Plaintiff had no limitations in a wide variety of mental functions, moderate limitations with respect to maintaining a regular schedule and relating adequately with others, and marked limitations in appropriately dealing with stress. Tr. 367. Further, after reviewing Plaintiff's records, non-examining state psychological consultant Dr. Bruno's evaluation was even more succinct: "[w]ith evidence in the file these impairments do not meet a listing. With a marked limitation for dealing with stress and being mildly limited in relating with other[s] this impairment is severe." Tr. 369 (referencing, among other things, Dr. Ippolito's consultative examination).

Second, in *Genua*, the medical opinion that the ALJ relied upon assessed only plaintiff's ability to (1) understand, remember, and apply information, and (2) concentrate, persist, or maintain pace. *Genua*, 2019 WL 5691827 at *5. "[T]here was no medical opinion that evaluated or that was relevant to plaintiff's performance in [the other] two of the four new functional domains[,]" and it was not clear that the ALJ considered and applied the opinion of the state-agency psychological consultant in the "special technique" analysis. *Id.* In the present case, however, the ALJ's decision clearly cites to Dr. Ippolito's psychological evaluation for each of the four Paragraph B criteria. Specifically, the ALJ found:

> In understanding, remembering, or applying information, the claimant has a moderate limitation. The claimant had impaired memory due to emotional distress on examination in September 2016. [citing the Ippolito CE Rep't, Tr. 367.] She could recall only one of three objects after delay. [citing the Ippolito CE Rep't, Tr. 367.] It is noted, however, that the claimant completed high school in a general education setting

16

and was able to continue with college completing approximately one year of college level courses . . . . She reported wanting to go back college to get a degree in criminal justice . . . . The claimant has no greater than a moderate limit in this area.

In interacting with others, the claimant has a moderate limitation. The claimant reported positive relationships with her children, two biological brothers, adopted mother, and grandmother . . . . She reported some interpersonal difficulty with her boyfriend and that she is not close with extended family or her sister . . . . The claimant attends church on occasion . . . . The claimant did report that she lost a job but for lying on her time sheets . . . . She is consistently reported as cooperative or pleasant by treatment providers . . . . The claimant is able to use public transportation. [citing the Ippolito CE Rep't, Tr. 367.]

With regard to concentrating, persisting, or maintaining pace, the claimant has a marked limitation. The claimant had impaired attention and concentration on examination in September 2016. [citing the Ippolito CE Rep't, Tr. 367.] She was able to count and perform simple calculations without errors but had difficulty with serial three subtraction. [citing the Ippolito CE Rep't, Tr. 367.]

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant is able to care for herself and her son. She performs the cooking, cleaning, laundry, grocery shopping, showering, bathing, and dressing required. [citing the Ippolito CE Rep't, Tr. 367.] She manages her own money, drives, and takes public transportation. [citing the Ippolito CE Rep't, Tr. 367.] She does have decreased energy and motivation and isolates herself from others. [citing the Ippolito CE Rep't, Tr. 367–68.]

Tr. 44.[6]

The Court finds that the foregoing assessment of Plaintiff's Paragraph B criteria satisfied the ALJ's duty to consider "all of the relevant medical and non-medical evidence in [Plaintiff's] case record to evaluate [her] mental disorder." *Gary*

---

[6] The ALJ's citations to the record have been omitted from this passage, *except* for instances in which the ALJ cited to the report from Dr. Ippolito's consultative examination.

*H.*, 2020 WL 7239821, at *8 (quoting App'x 1, § 12.00(F)(3)). Moreover, the ALJ's "articulation of the reason(s) why the" Plaintiff is not disabled, particularly in his lengthy discussion of how he arrived at Plaintiff's RFC determination (Tr. 45–49), was sufficient for the Court to review the ALJ's rationale and his basis for his finding at step three of the evaluation process. *See SSR 17-2* at *4.

## CONCLUSION

In sum, the Court finds that the ALJ's decision rests on adequate findings supported by evidence having rational probative force. Accordingly, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings (ECF No. 9) is denied, and the Commissioner's motion (ECF No. 11) is granted. The Clerk of Court is directed to close this case.


DATED:    February 18, 2021
          Rochester, New York


                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge